**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **EMANUEL REED, II,** | **CASE NO. 5:18-CV-01711** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **MILLENNIA HOUSING MANAGEMENT, LTD.,** | **MEMORANDUM OF OPINION AND ORDER** |
| **Defendant.** | |

This matter comes before the Court upon the Motion for Summary Judgment of Defendant Millennia Housing Management, Ltd. ("Millennia"). (Doc. No. 19.) Plaintiff Emanuel Reed, II ("Reed") did not file a response or opposition. For the following reasons, Millenia's Motion for Summary Judgment is GRANTED.

I. **Background**

  a. **Factual Background**

Millenia is a private entity that manages multifamily apartment properties. (Doc. No. 5 at ¶ 5.) In June 2014, Millennia hired Reed as a Custodian at one of its apartment communities in Akron, Ohio. (Doc. No. 19-2 at 5-6.) When Reed began his employment, he signed a document acknowledging that he received and read Millennia's Employee Handbook (the "Handbook"). (*Id.* at 6, 87.) Reed denies that he actually received or read the Handbook at that time, but admits he eventually received a copy in 2018. (*Id.* at 6.) The Handbook prohibits a variety of conduct, including (1) dishonesty, (2) sleeping while on duty, and (3) creating unsafe conditions by obstructing floors,

doorways, and aisles. (*Id.* at 98, 100.) Employees who engage in such behavior may be subject to disciplinary action, up to and including termination. (*Id.* at 98-100.)

Reed, who is African American, asserts that he was subjected to several forms of unfavorable treatment during his employment with Millenia because of his race. For instance, Reed claims that a Millenia manager required him to follow a checklist that listed the tasks that he needed to complete. (*Id.* at 19, 169.) However, other Millenia employees followed similar types of checklists. Specifically, according to Reed, Millenia maintenance employees received work order forms that served as their checklists and "the maintenance supervisor might have had a checklist." (*Id.* at 20.) In addition, Reed claims he did not receive certain equipment he needed to clean the floors to Millenia's expectations. (*Id.* at 10.) Reed conceded, however, that he ultimately received at least some of this equipment, that he did not receive written discipline for failing to clean the floors properly, that Millenia's Chief Executive Officer actually complimented him on his work on the floors, and that he did not know what happened when other employees requested new equipment. (*Id.* at 22-23.)

Further, Reed claims that another employee accused him of using drugs while at work, although Reed never received any discipline as a result of this allegation. (*Id.* at 27.) Reed also alleges that between 2014 and late 2015, Millennia permitted other employees to engage in "scrapping"—selling scrap material that they located on Millennia property for a personal profit— but disciplined him for scrapping. (*Id.* at 17.) This discipline did not reduce Reed's pay or affect his job responsibilities. (*Id.* at 18, 167.) Millenia also had instructed Reed to stop scrapping before disciplining him, as he had been permitted to scrap for a period of time, and ultimately prohibited all employees from scrapping. (*Id.* at 17-19, 168.)

2

Additionally, Reed claims that another Millenia employee, Rick Okragly ("Okragly"), harassed him in a variety of ways. Specifically, Reed asserts that in 2015, Okragly placed a dust pan full of trash on top of his backpack, which had his lunch inside of it. (*Id.* at 10, 12-14.) After a meeting in October 2015 with Millenia officials regarding this issue, however, Okragly apologized to Reed. (*Id.* at 10, 16.) According to Reed, Okragly also frequently attempted to document Reed's misconduct by taking pictures of him when it appeared he was violating Millenia policies. (*Id.* at 15.) Reed also claims that Okragly took Reed's plate of food from him at an annual picnic in July 2015 to give to a tenant that had come late, although Reed admits he was able to get another plate for himself. (*Id.* at 46-47.)

Finally, Reed claims Okragly made several inappropriate comments to him. In particular, Okragly called Reed "Darla's boy." (*Id.* at 14.) Darla Payne, who is also African American, was Reed's supervisor for a period of time and had a good relationship with Reed. (*Id.* at 14, 24.) Okragly also allegedly asked Reed why "black people wait seven days or more when they bury people," called Reed "from the ghetto and uneducated," and told racial jokes (although Reed always instructed Okragly to stop talking before Okragly "got going" with the jokes). (*Id.* at 14-15.) When Reed was asked why he thought Okragly called him Darla's boy, Reed testified, "Same reason he called me from the ghetto and uneducated and all of that, I guess because he just had a negative attitude toward me." (*Id.* at 14.)

On August 10, 2018, Okragly and two outside contractors for Millenia found Reed apparently asleep in the stairwell on the sixth floor of the apartment building where Reed worked. (Doc. No. 19-2 at 30-33; Doc. No. 19-3 at ¶¶ 2-3, Exs. A, B.) Okragly and the contractors either stepped over or around Reed, and then Okragly turned around to photograph Reed. (Doc. No. 19-3 at ¶¶ 2-3, Ex.

3

B.) Reed contends that he was not asleep, that he was merely taking his break, and that he moved out of the way so that no one had to step over him. (Doc. No. 19-2 at 30-31.)

As a result of Reed's potential violation of Millenia's policies, Millenia's Director of Human Resources, Debra Moore ("Moore"), who is also African American, suspended Reed while Millenia investigated the incident. (Doc. No. 19-3 at ¶¶ 2, 8.) During the investigation, Millenia obtained the photograph that showed Reed apparently asleep at the top of the stairwell and statements from both of the outside contractors who had come across Reed. (*Id.* at ¶ 3.) Both of the contractors' statements provided that they saw Reed sleeping at the top of the stairwell and that they had to step over him in order to pass by. (*Id.* at ¶ 3, Ex. B.) Millenia also interviewed Reed approximately one week after the incident. (Doc. No. 19-2 at 27-28; Doc. No. 19-4 at ¶ 4.) At one point during the interview, Reed denied that he had been sleeping. (Doc. No. 19-2 at 28; Doc. No. 19-4 at ¶ 4.) Reed did not offer any evidence in support of his position beyond his own statements. (Doc. No. 19-4 at ¶ 4.)

After the investigation, Moore concluded that Reed had indeed been sleeping. (Doc. No. 19-3 at ¶ 5.) Moore based her conclusion on the photograph of Reed and the statements by the two contractors, who she considered credible witnesses because they were not Millenia employees and did not know Reed. (*Id.*) Reed does not dispute that Moore honestly believed that he had been sleeping as the contractors asserted. (Doc. No. 19-2 at 33.) Consequently, Moore determined that Reed had committed a serious violation of Millenia's policies. (Doc. No. 19-3 at ¶ 6.) Specifically, Moore believed Reed had violated Millenia's policies by (1) sleeping while working, (2) sleeping in an unsafe manner by laying his legs at least partially across the stairwell in a way that caused people to step over him while they were near the top of a flight of stairs, and (3) lying during the investigation

4

by denying that he was asleep. (*Id.*) As a result, Moore decided to discharge Reed from his employment. (*Id.* at ¶ 7.)

### b. Procedural History

On June 12, 2018, Reed, acting *pro se*, filed a Complaint against Millenia in the Court of Common Pleas of Summit County, Ohio. (Doc. No. 1-1.)[1] Reed alleged that Millenia's conduct towards him violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Ohio Civil Rights Act, Ohio Rev. Code § 4112; the United States Constitution; and the Ohio Constitution. (*Id.*) On July 23, 2018, Millenia removed Reed's suit to this Court. (Doc. No. 1.)

On June 26, 2019, Millenia filed its Motion for Summary Judgment. (Doc. No. 19.) Although Reed filed his Complaint before Millenia terminated his employment, Millenia's Motion for Summary Judgment addresses Reed's termination because it appeared from Reed's statements during an October 31, 2018 Case Management Conference that he intended his claims to encompass his discharge from employment. (Doc. No. 19-1 at 10; *see* Doc. No. 12 at 6-7.) Thus, Millenia treated Reed's suit as asserting (1) discrimination and retaliation claims based on Reed's alleged wrongful discharge, (2) a hostile work environment claim, and (3) constitutional claims. (Doc. No. 19-1 at 10.) Millenia has moved for summary judgment with respect to each claim.

On September 5, 2019, the Court held a Status Conference in which it advised Reed that the July 26, 2019 deadline for filing any opposition to Millenia's Motion for Summary Judgment had

---

[1] On May 24, 2017, prior to filing the instant action, Reed filed charges of discrimination based on his race against Millenia with the Ohio Civil Rights Commission ("OCRC"). (Doc. No. 19-2 at 108.) After being suspended, Reed filed another charge with the OCRC on September 4, 2018, asserting Millenia had engaged in racial discrimination and retaliation. (*Id.* at 176.) In both instances, the OCRC found that it was "NOT PROBABLE" that Millennia discriminated against Reed in violation of the Ohio Civil Rights Act. (*Id.* at 184, 186.) Accordingly, the OCRC dismissed both charges and issued Reed "right to sue" letters. (*Id.* at 184-87.)

5

passed and the docket reflected that he had not filed a response. (Doc. No. 22.) Reed asserted that he had not received a copy of the Motion for Summary Judgment and that, based on a discussion at Reed's deposition, he had expected Millenia to contact him regarding additional discovery Millenia sought, but no such contact had been made. (*Id.*) In response, Millenia represented that the Motion and its attachments had been delivered to Reed's address on file with the court—which Reed confirmed was his correct address—and that it had confirmation of such delivery. (*Id.*) The Court ordered Millenia to submit its delivery confirmation and the deposition transcript regarding the parties' discussion about discovery by the end of the next day, and gave Reed two weeks to respond to Millenia's submission. (*Id.*)

Millenia timely submitted evidence that its Motion for Summary Judgment was delivered to Reed's address. (Doc. Nos. 23-1, 23-2.) Millenia also submitted the relevant portion of Reed's deposition transcript showing that Millenia had not made any representations that it would contact Reed. Instead, at the end of the deposition, Millenia advised Reed to send Millenia any written discovery requests he may have. (*See* Doc. No. 23-3.) Reed failed to file any response to Millenia's submission by the deadline imposed by the Court's Order following the Status Conference. Accordingly, without any response from Reed attempting to demonstrate good cause for not timely filing his opposition to Millenia's Motion for Summary Judgment, the Court determined that the Motion was ripe and that it would not consider any late opposition that was filed.

## II. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in

6

favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at 508-09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

### III. Analysis

#### a. Constitutional Claims

In his Complaint, Reed alleges that Millenia violated his rights to freedom of association, equal protection, and due process as provided for in the First and Fourteenth Amendments to the U.S. Constitution and the Ohio Constitution. (Doc. No. 1-1 at 5-6.) Millenia asserts that it is entitled to judgment on Reed's constitutional claims because a party may not bring a claim directly under the First or Fourteenth Amendments against a private entity. (Doc. No. 19-1 at 11.) The Court agrees.

"It is undisputed that First and Fourteenth Amendment protections . . . are triggered only in the presence of state action." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000); *accord Haddox v. Moreland*, No. 95CA20, 1996 WL 451361, at *1 (Ohio Ct. App. 4th Dist. Aug. 5, 1996) ("Generally, individual rights and liberties protected by the United States and Ohio Constitutions, such as the right to due process, apply only to actions of governmental entities."). Here, Millenia is a private entity, and there are no allegations that Millenia's actions are in any way attributable to the state. Consequently, Millenia's Motion for Summary Judgment is granted with respect to Reed's constitutional claims.

#### b. Wrongful Discharge

Next, Millenia argues that it is entitled to summary judgment on Reed's claims of racial discrimination and retaliation based on his alleged wrongful discharge under Title VII and the Ohio Civil Rights Act. Millenia asserts that it has identified a legitimate, non-discriminatory, and non-retaliatory reason for its termination of Reed—his policy violations relating to his sleeping at work—and Reed cannot establish that Millenia's proffered reason is actually a pretext for unlawful discrimination. (Doc. No. 19-1 at 11-14.) The Court finds that Millenia has shown the absence of a

8

genuine issue of material fact on this issue and that it is entitled to judgment as a matter of law, and therefore grants Millenia's Motion for Summary Judgment on Reed's wrongful discharge claims.

Reed's claims under Title VII and the Ohio Civil Rights Act "may be analyzed together . . . because 'Ohio's requirements are the same as under federal law.'" *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003)); *Lindsey*, 295 F. App'x at 760 n.1 ("The Ohio Civil Rights Act mirrors Title VII in all relevant respects for Plaintiff's discrimination and retaliation claims."); *see* 42 U.S.C. §§ 2000e-2, 2000e-3; Ohio Rev. Code § 4112.02. Under Title VII, it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits retaliating against employees who oppose unlawful employment practices. *See* 42 U.S.C. § 2000e-3(a).

To establish that a defendant engaged in discrimination or retaliation in violation of Title VII, a plaintiff may rely on either direct or circumstantial evidence. *Daniels v. Pike Cty. Comm'rs*, 706 F. App'x 281, 291 (6th Cir. 2017); *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Direct evidence is evidence which, if believed, requires the conclusion that unlawful discrimination or retaliation was at least a motivating factor in the employer's actions. *Johnson*, 319 F.3d at 865; *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543-44 (6th Cir. 2008). Here, Reed has not submitted any direct evidence of Millenia's unlawful discrimination or retaliation with regard to his discharge.

In the absence of direct evidence, the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. *See Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007). Under this framework, "the plaintiff faces the initial burden of presenting a prima facie case of unlawful discrimination." *Johnson*, 319 F.3d at 866. "The establishment of a prima facie case creates a rebuttable presumption of discrimination and requires the defendant to 'articulate some legitimate, nondiscriminatory reason' for taking the challenged action." *Id.* (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000)). Finally, "[i]f the defendant is able to satisfy this burden, the plaintiff must then 'prove that the proffered reason was actually a pretext to hide unlawful discrimination.'" *Id.* The *McDonnell Douglas* burden-shifting framework applies to retaliation claims as well. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008).

In its Motion for Summary Judgment, Millenia does not challenge Reed's ability to establish a prima facie case of discrimination and retaliation, but asserts that Millenia has established a legitimate, nondiscriminatory, and nonretaliatory reason for its actions. (Doc. No. 19-1 at 11.) To meet this burden, a defendant "need not *prove* a nondiscriminatory reason for [its actions], but need merely *articulate* a valid rationale." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996). In this case, Millenia presented evidence that its Director of Human Resources, Moore, terminated Reed's employment because he violated multiple Millenia policies on August 10, 2018 when he was found sleeping at work. (Doc. No. 19-3 at ¶¶ 6-7.) Thus, Millenia has clearly articulated a legitimate, nondiscriminatory, and nonretaliatory reason for its discharge of Reed.

As a result, to survive Millenia's Motion for Summary Judgment, Reed must "identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext

10

for unlawful discrimination." *Tennial v. United Parcel Service, Inc.*, 840 F.3d 292, 303 (6th Cir. 2016) (quoting *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011)). A plaintiff can establish pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson*, 319 F.3d at 866 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). However, "[r]egardless of which option is used, the plaintiff retains the ultimate burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." *Id.* (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001)).

Moreover, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'" *Id.* (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). For example, in *Dunn v. GOJO Industries*, the court affirmed summary judgment in favor of the defendant even though the plaintiff disputed whether she was sleeping on the job because she failed to provide any evidence challenging the employer's honest belief that she was asleep. 96 N.E.3d 870, 881 (Ohio Ct. App. 9th Dist. 2017). The employer based its belief on a photograph, two videos, and multiple statements from witnesses. *Id.* at 876.

Similarly, Millenia determined that Reed had been sleeping at work based on a photograph and statements from two independent contractors that indicated that they saw Reed sleeping at the

11

top of the stairwell and that they had to step over him in order to pass by. (Doc. No. 19-3 at ¶¶ 3-5.) Although Reed contends that he was not actually asleep (Doc. No. 19-2 at 30-31), Reed failed to put forth any evidence tending to show that Millenia lacked an honest belief that he was sleeping during work. In fact, Reed himself admitted that he thought Moore honestly believed the contractors' statements that he was asleep. (*Id.* at 33.) Thus, it is irrelevant that Reed disputes he committed the misconduct for which he was terminated, because it is undisputed that Millennia honestly believed he did commit such misconduct.

Nor has Reed identified any other evidence that would establish that Millenia's proffered reason for his termination was pretextual. Indeed, Reed failed to file any opposition to Millenia's Motion for Summary Judgment. As such, he has not identified any employee who committed the same type of misconduct as him, has not identified any instance where the decisionmaker at issue, Moore, declined to discharge an employee who had engaged in such misconduct, and has not proffered any evidence to show that Millennia treated him differently from other similarly situated employees. Accordingly, summary judgment in favor of Millenia on Reed's wrongful discharge claims is proper.

### c. Hostile Work Environment

Finally, Millenia argues that summary judgment on Reed's hostile work environment claim is warranted because Reed has not produced evidence showing that his race motivated the alleged harassment or that the alleged harassment was sufficiently severe and pervasive. (Doc. No. 19-1 at 14.) The Court concludes that Millenia is entitled to summary judgment on Reed's hostile work environment claim as well.

Title VII "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult and thus prohibits conduct which is sufficiently severe and pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment." *Lindsey*, 295 F. App'x at 765 (internal quotations and citations omitted). To establish a hostile work environment claim, "plaintiffs must prove that: (1) they were members of a protected class; (2) they were subjected to unwelcome harassment; (3) the harassment was based on plaintiffs' protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassing conduct but failed to take corrective or preventative actions." *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 (6th Cir. 2008).

Millenia first asserts that Reed cannot establish that he was harassed because of his race. (Doc. No. 19-1 at 14-16.) In order to survive summary judgment, plaintiffs "cannot rely on conjecture or conclusory accusations" that they were harassed based on their protected status. *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008); *see also Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 433 (6th Cir. 2014) (holding several of the plaintiff's allegations failed to meet "the requirement that the harassing behavior be because of [the plaintiff's] race" because "[t]he record is devoid of evidence to indicate that" the harassment occurred "because he is African–American").

Here, there is no evidence that the alleged harassment of Reed involving the checklist requirement, scrapping prohibition, equipment requests, or drug use allegation occurred because he is African American. To the contrary, Millenia cites to evidence showing that other Millennia employees experienced much of the same treatment. For example, Reed conceded that Millennia required at least several other employees to use checklists or similar documents and that Millennia ultimately prohibited other employees from scrapping. (Doc. No. 19-2 at 18-20, 168, 170-172.) In

13

addition, although Reed claimed he should have received certain equipment, he admitted at one point that he did not know what happened in other situations where employees requested new equipment. (*Id.* at 22.) There is also a complete lack of evidence that his coworker's allegation regarding his drug use was based on his race. Again, because Reed did not file an opposition to Millenia's Motion for Summary Judgment, he has failed to identify any evidence to show that any of this treatment was because of his race, such as identifying other similarly situated employees who did not experience such treatment.

This leaves only Okragly's conduct towards Reed. Arguably, Reed has also failed to establish that Okragly's conduct was because of Reed's race. Reed admitted that he did not know how Okragly interacted with other people. (*Id.* at 14.) Moreover, when Reed was asked to explain what he believed was motivating Okragly, Reed testified that "I guess because he just had a negative attitude toward me," rather than claiming Okragly had a negative attitude toward all African Americans. (*Id.*) On the other hand, several of Okragly's comments to Reed were clearly racially charged, such as his racial jokes and his remarks that Reed was "from the ghetto and uneducated." (*Id.* at 14-15.) Thus, there is some evidence that Okragly's harassment of Reed was based on his race.

However, even assuming that there is a genuine dispute of fact regarding whether Okragly's conduct was based on Reed's race, this conduct was not sufficiently severe or pervasive for Reed's hostile work environment claim to survive summary judgment. For alleged harassment to be actionable, "[t]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997). "To determine whether an environment is sufficiently hostile or abusive, a court must consider 'all of the

14

circumstances,' including the 'frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Lindsey*, 295 F. App'x at 766 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The harassment "must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (internal quotations and citations omitted).

To illustrate, in *Cecil v. Louisville Water Co.*, a female plaintiff asserted that her male supervisor made numerous inappropriate comments, including comments that she "dressed too nicely, wanted to play in the dirt, and reminded him of Lisa Douglas [a character in a television show whom many perceived to be dim-witted]" and that certain work locations were "no place for a lady." 301 F. App'x 490, 493, 499 (6th Cir. 2008). He also humiliated her in meetings when she requested help and monitored her and other females more closely than male employees. *Id.* In addition, a male human resources officer called her "easy" and told other male employees to circulate that information. *Id.* at 493. Nonetheless, the Sixth Circuit agreed with the district court that the alleged harassment was not "severe and pervasive" because "[t]he comments, while admittedly inappropriate, appear to have been isolated incidents" and the plaintiff did "not present[] evidence indicating that any of the alleged incidents of harassment interfered with her work performance." *Id.* at 500.

Similarly, in *Clay v. United Parcel Service, Inc.*, the Sixth Circuit held that fifteen specific incidents of racially-motivated harassment spanning a two-year period, including the refusal to remove the plaintiff from a position that required heavy lifting that resulted in a groin injury to the

15

plaintiff, were not sufficiently severe and pervasive to be actionable. 501 F.3d 695, 707-08 (6th Cir. 2007); *see also Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000) (affirming summary judgment for the defendant even though the female plaintiff asserted that her male supervisor implied he would improve her performance evaluation in exchange for sexual favors, told several dirty jokes in her presence, called her "hot lips," and commented on multiple occasions about her state of dress). As these cases show, the Sixth Circuit "has established a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory." *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017).

Okragly's alleged harassment of Reed has not met this bar. Reed asserts that, during his four years of employment with Millenia, Okragly made several inappropriate comments and racial jokes, attempted to document Reed's misconduct by taking pictures of him, took Reed's plate of food at a picnic to give to a tenant (although Reed was able to get another plate for himself), and placed a dirty dustpan on Reed's backpack. (Doc. No. 19-2 at 10, 12-15, 46-47.) These incidents, if true, are of course troubling, but they are not actionable as a hostile work environment. Indeed, there is no evidence that Okragly's conduct unreasonably interfered with Reed's work, most of the alleged harassment consisted of mere offensive utterances, and the incidents were relatively isolated. As such, Okragly's behavior "consisted of the kind of simple teasing, offhand comments, and isolated incidents that *Faragher* made clear did not amount to discriminatory changes in the terms and conditions of a plaintiff's employment." *Morris*, 201 F.3d at 790. Consequently, Millenia is entitled to summary judgment on Reed's hostile work environment claim.

## IV. Conclusion

For the reasons set forth above, Millenia's Motion for Summary Judgment (Doc. No. 19) is GRANTED.

**IT IS SO ORDERED.**

Date: November 12, 2019

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE